J-S35037-19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| LUIS GONZALEZ, | : | |
| | : | |
| Appellant | : | No. 2195 EDA 2017 |

Appeal from the PCRA Order June 19, 2017
in the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0009991-2009

BEFORE:  OLSON, J., STABILE, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.:　　　　**FILED SEPTEMBER 24, 2019**

Luis Gonzalez (Appellant) appeals from the June 19, 2017 order dismissing his petition filed under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.   We affirm, and deny Appellant's motion to supplement Exhibit A to his brief.

We begin with the trial court's summary of the facts as recounted by this Court in Appellant's direct appeal.

> The evidence adduced at trial established that Appellant raped his stepdaughter, [Victim], unmercifully in every way possible, starting from the tender young age of 8 and continuing until she was 16. Over this 8[-]year period, Appellant repeatedly penetrated each orifice of [Victim] - anally, orally, and vaginally - and also penetrated her with an object. He forced her to perform oral sex on him twice per week starting when she was in fourth grade and continuing until the age of 16.  Appellant raped his stepdaughter with such force that he tore/transected her hymen - which, it should be noted, occurs in fewer than five percent of sexual abuse cases. Further, Appellant perpetrated the sexual abuse over an extended period by repeatedly

---

* Retired Senior Judge appointed to the Superior Court.

threatening [Victim] that he would kill her mother, sister[,] and family members if she were to tell anyone. [Victim] believed that Appellant would follow through on his violent threats, having previously witnessed him beat, kick[,] and choke her mother on more than one occasion.

In fact, [Victim's] sister,[1] M.G., who was 8 years old at the time, caught Appellant raping [Victim], then age 11, on the sofa, prompting [M.G.] to yell "stop ... please stop[!]" Appellant continued, however, and angrily ordered M.G. to go back upstairs, and she complied. Moments later, [Victim] entered the upstairs bathroom crying and bleeding from her vagina[. At trial, M.G. recounted the incident as follows:]

> My room was right next to the bathroom, and I heard [Victim] crying in the bathroom. So, I went to the bathroom to ask her, like, this [while] crying, and she just said I don't want to talk about it. And she was bleeding, and I didn't know what [that was], that moment, I didn't know, like, why she was bleeding. And I was crying, and [Appellant] came up to me and said don't tell nobody, don't tell your mom, don't tell nobody.... He said I will hurt you and your family.

Like [Victim], M.G. was scared to tell anyone about the incident due to first-hand observations of Appellant beating her mother in violent rages. Indeed, both girls testified to one incident in which they heard banging, screaming and yelling from the basement. They walked over to the basement steps and looked down to find Appellant beating their mother. [As described by Victim:]

> … he told us to stay where we are and watch, and he, like, was - my mom was on the floor, so he would kick her in the ribs, punch her. We seen [*sic*] him, like, grabbing her neck and she was crying, she was screaming, but her scream was very light, like, already, and she ended up passing out, and we had to stay there on the steps watching her.

---

[1] Victim and M.G. are technically half-sisters who share the same mother. Appellant is M.G.'s father.

In addition to threatening harm, Appellant routinely explained to [Victim] that he "'had to'" commit these sexual assaults, as follows: "He would tell me that it was because I was too close to my mom.... And every time I would get close to my mom or I would follow her, every time I get close to my mom, he would do this. He said this is what you get for not being close with me."

*Commonwealth v. Gonzalez*, 112 A.3d 1232, 1234-35 (Pa. Super. 2015) (duplicate numbers and citations to notes of testimony omitted; some brackets added and some retained from source).

Following a jury trial, Appellant was convicted of rape, involuntary deviate sexual intercourse (IDSI) with a child, aggravated indecent assault of a child under 16, intimidation of a witness or victim, endangering the welfare of children, terroristic threats, and unlawful contact with a minor. On June 4, 2013, the trial court sentenced Appellant to an aggregate term of 30 to 60 years in prison. Appellant filed a direct appeal, and this Court affirmed his judgement of sentence on March 11, 2015.[2] *See generally id.* Appellant did not seek further appellate review by our Supreme Court.

Following the conclusion of his direct appeal, on April 17, 2015, Appellant filed *pro se* a document he entitled a motion to modify sentence, which, in essence, alleged that he was subjected to an illegal sentence based

---

[2] While his direct appeal was pending, Appellant filed *pro se* a PCRA petition and purported amendments to this petition on November 8, 2014, December 24, 2014, and February 18, 2015. All of these filings were premature. *See Commonwealth v. Kubis*, 808 A.2d 196, 198 n.4 (Pa. Super. 2002) ("The PCRA provides petitioners with a means of collateral review, but has no applicability until the judgment of sentence becomes final. Therefore, [a] premature petition does not constitute a first PCRA petition.").

- 3 -

upon **Alleyne v. United States**, 570 U.S. 99 (2013) (holding that any fact that increases a mandatory minimum sentence is an element of an aggravated offense, which requires pre-trial notice to defendant, the submission of the fact to a factfinder, and the factfinder's conclusion that the fact has been established beyond a reasonable doubt). As the relief he was seeking was cognizable under the PCRA, this should have been considered his first PCRA petition.[3] **Commonwealth v. DiMatteo**, 177 A.3d 182, 191 (Pa. 2018). However, it appears that the trial court never ruled upon the April 17, 2015 petition, and considered a petition filed *pro se* by Appellant on August 25, 2015, to be his first PCRA petition.[4] In the August 25, 2015 petition, Appellant presented ten claims, all of which alleged his counsel rendered ineffective assistance at trial and on appeal.

---

[3] Unlike his earlier attempts to file a petition while his direct appeal was pending, he filed the April 17, 2015 petition after his sentence was final (*i.e.*, after the expiration of the time for seeking review by our Supreme Court). **See** 42 Pa.C.S. § 9545(b)(3) ("[A] judgment becomes final at the conclusion of direct review … or at the expiration of time for seeking review.").

[4] The fact that the April 17, 2015 petition was technically pending when the August 25, 2015 petition was filed is of no moment; the PCRA court had jurisdiction to consider both simultaneously. **See Commonwealth v. Montgomery**, 181 A.3d 359, 365 (Pa. Super. 2018) ("PCRA courts are not jurisdictionally barred from considering multiple PCRA petitions relating to the same judgment of sentence at the same time unless the PCRA court's order regarding a previously filed petition is on appeal and, therefore, not yet final.").

The PCRA court appointed counsel and permitted counsel to file an amended petition, which counsel filed on September 12, 2016.[5] Counsel's amended petition repeated many of Appellant's prior claims from various petitions, ten of which were set forth without detail and three of which counsel expanded upon. Over the Commonwealth's objection, the PCRA court granted an evidentiary hearing. The court limited the hearing to three issues of trial counsel's alleged ineffectiveness: (1) not consulting with or presenting an expert witness to rebut the Commonwealth's expert regarding sexually-transmitted diseases; (2) not objecting to certain statements in the Commonwealth's closing; and (3) failing to investigate a protection from abuse order. N.T., 4/17/2017, at 2-3. The hearing was conducted on April 17, 2017. Appellant's trial counsel, Todd Fiore, was the only witness. Appellant also made a statement to the PCRA court. On June 19, 2017, the PCRA court dismissed Appellant's petition without elaboration.

---

[5] Prior to the appointment of counsel, Appellant filed *pro se* what he deemed to be an amended petition on December 31, 2015. None of the claims Appellant attempted to raise in that filing is at issue on this appeal, so we need not consider this filing further. Subsequent to the appointment of counsel, on May 22, 2016, and December 2, 2016, Appellant filed *pro se* two additional purportedly amended petitions. Because hybrid representation is prohibited in this Commonwealth, the May 22, 2016 and December 2, 2016 filings were legal nullities. **See Commonwealth v. Willis**, 29 A.3d 393, 400 (Pa. Super. 2011).

Appellant timely filed *pro se* a notice of appeal.[6] Following the filing of a concise statement by Appellant's PCRA counsel pursuant to Pa.R.A.P. 1925(b), Appellant requested to proceed *pro* se. This Court remanded for a hearing pursuant to **Commonwealth v. Grazier**, 713 A.2d 81 (Pa. 1998). Following the **Grazier** hearing, the PCRA court permitted PCRA counsel to withdraw and Appellant to proceed *pro se*. Appellant then filed *pro se* a new concise statement, and the PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a). The case is now ripe for our disposition.

On appeal, Appellant presents nine issues, all of which are related to trial counsel's alleged ineffectiveness.[7] Appellant's Brief at 3-4. We are guided by the following standard of review in assessing Appellant's issues, some of which we address together for ease of disposition. On review of orders denying PCRA relief, our standard is to determine whether the PCRA court's ruling is free of legal error and supported by the record. **Commonwealth v. Orlando,** 156 A.3d 1274, 1280 (Pa. Super. 2017) (citation omitted). To prevail on a petition for PCRA relief, a petitioner must plead and prove, by a preponderance of the evidence, that his conviction or sentence resulted from one or more of the circumstances enumerated in 42

_____

[6] Unlike other filings, because a notice of appeal protects a constitutional right, this Court will accept a notice of appeal filed *pro se* by an appellant represented by counsel. **Commonwealth v. Williams**, 151 A.3d 621, 624 (Pa. Super. 2016).

[7] Appellant elected to abandon the tenth issue he had set forth in his concise statement. Appellant's Brief at 4.

- 6 -

Pa.C.S. § 9543(a)(2). These circumstances include ineffectiveness of counsel, which "so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S. § 9543(a)(2)(ii).

"[C]ounsel is presumed to be effective, and the petitioner bears the burden of proving to the contrary." *Commonwealth v. Brown*, 196 A.3d 130, 150 (Pa. 2018).

> It is well-established that counsel is presumed to have provided effective representation unless the PCRA petitioner pleads and proves all of the following: (1) the underlying legal claim is of arguable merit; (2) counsel's action or inaction lacked any objectively reasonable basis designed to effectuate his client's interest; and (3) prejudice, to the effect that there was a reasonable probability of a different outcome if not for counsel's error.
>
> The PCRA court may deny an ineffectiveness claim if the petitioner's evidence fails to meet a single one of these prongs. Moreover, a PCRA petitioner bears the burden of demonstrating counsel's ineffectiveness.

*Commonwealth v. Franklin*, 990 A.2d 795, 797 (Pa. Super. 2010) (internal citations omitted).

## Issue One: Expert Testimony as to Victim's Hymen

Appellant's first issue concerns Attorney Fiore's alleged ineffectiveness in relation to expert testimony at trial. By way of background, the Commonwealth presented the testimony of Dr. Maria McColgan, the Director of the Child Protection Program at St. Christopher's Hospital for Children. In 2009, shortly after the allegations of Appellant's abuse came to light, Dr. McColgan and her hospital team interviewed then-16-year-old Victim

regarding her allegations of abuse and conducted a medical examination of Victim. At trial, Attorney Fiore stipulated that Dr. McColgan was a board-certified child abuse pediatrician who was qualified to testify as an expert in the diagnosis and treatment of child sexual abuse.

Based upon the physical examination and the history obtained from Victim, Dr. McColgan diagnosed Victim with "[c]hild sexual abuse." N.T., 2/7/2017, at 20. Dr. McColgan testified that during the 2009 medical examination of then-16-year-old Victim, an "area" of her hymen was "absent," around the 6 o'clock position, which was an injury Dr. McColgan described as a "transection." *Id.* at 16. She testified that "all [female] infants are born with a hymen, particularly in the posterior position;" in her opinion, the transection indicated "trauma [to Victim's hymen] previously that has since healed." *Id.*

Specifically, Dr. McColgan opined that the transection had been caused by "some blunt force trauma" by "something that would have torn the hymen pretty significantly[.]" *Id.* at 17. Dr. McColgan testified that one way a transection could occur was penetration by an adult male penis or some other object with force. *Id.* at 18. According to Dr. McColgan, a transected hymen was not common for a 16-year-old child, and "[e]ven in children who are sexually abused with reports of penetration, only less than about five percent of children with sexual abuse happen to fit into a finding such as this." *Id.* at 19. Dr. McColgan was not asked to identify the source

of this statistic, but confirmed it was consistent with her experience examining children at her clinic. *Id.* She also noted that although a physical examination of Victim's anus did not reveal any tears or fissures, it is "extremely rare" to find physical evidence of abuse. *Id.* at 21. According to Dr. McColgan, like the hymen, most anal injuries heal quickly. *Id.* at 21.

Dr. McColgan reiterated on cross-examination that 95% of child sexual abuse victims do not have definitive physical findings, but in this case, the finding of trauma to the hymen was consistent with the history provided by Victim. *Id.* at 29-30. She did acknowledge, however, that although it is "less common," a transected hymen could occur from consensual vaginal intercourse or some other cause, like the accidental impaling of an object in the vagina. *Id.* at 32.

On appeal, Appellant posits his first issue as follows: "Was Appellant denied a fair trial where Commonwealth expert state [*sic*] that a scar was located at the 6 o'clock position, and no evidence was presented at trial to substantiate this and counsel was ineffective[.]" Appellant's Brief at 3 (unnecessary capitalization altered); *see also* Concise Statement, 3/27/2018, at ¶ 1. As written, the precise nature of Appellant's issue is quite vague, and he risks waiver for failing to identify the issue with sufficient precision. *See* Pa.R.A.P. 1925(b)(4)(ii), 2116(a).

The argument section of Appellant's brief sheds some light on the issue he is trying to present. Appellant contends, *inter alia*, that Attorney

Fiore rendered ineffective assistance of counsel because he failed to challenge the physical evidence discussed by Dr. McColgan[8] and her corresponding opinion that the transection was caused by sexual abuse and not something with which Victim could have been born. Appellant's Brief at 10-17. He claims he presented counsel with cases, reports, and data that contradicted Dr. McColgan's opinion, but counsel did not use them and pursued a defense of witness fabrication instead. *Id.* He also claims Attorney Fiore should have obtained a defense expert to challenge the physical findings. *Id.*

The PCRA court contends that Appellant has waived issue number one by not raising it before the PCRA court, PCRA Court Opinion, 9/7/2018, at 10, but after reviewing Appellant's argument and his petitions, it does appear that Appellant preserved at least some portions of his argument.[9] Specifically, Appellant preserved the arguments that Attorney Fiore should have presented a defense expert, obtained the underlying studies upon

---

[8] Appellant refers to the physical evidence as a scar, but Dr. McColgan never testified that Victim had a scar. As noted *supra*, Dr. McColgan stated that Victim had a "transection" of the hymen, which Dr. McColgan described as an "area" of her hymen being "absent[.]" *Id.* at 16.

[9] To preserve a claim for appeal, a PCRA petitioner must set forth the claim in a PCRA petition or court-authorized supplement to the petition. *Commonwealth v. Elliott*, 80 A.3d 415, 430 (Pa. 2013); *see also* Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."); Pa.R.Crim.P. 902(B) (providing that the "[f]ailure to state such a ground [for relief] in the [PCRA] petition shall preclude the defendant from raising that ground in any proceeding for post-conviction collateral relief").

- 10 -

which Dr. McColgan's opinion was based, and challenged Dr. McColgan's testimony by using contradicting studies Appellant provided to Attorney Fiore. *See* PCRA Petition, 8/25/2016, at ¶¶ 2, 7. Nevertheless, these arguments as presented in Appellant's brief do not afford him relief.

Regarding the failure to call an expert witness, our Supreme Court has set forth the law as follows.

> Where a claim is made of counsel's ineffectiveness for failing to call witnesses, it is the appellant's burden to show that the witness existed and was available; counsel was aware of, or had a duty to know of the witness; the witness was willing and able to appear; and the proposed testimony was necessary in order to avoid prejudice to the appellant. The mere failure to obtain an expert rebuttal witness is not ineffectiveness. Appellant must demonstrate that an expert witness was available who would have offered testimony designed to advance appellant's cause. Trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony. Additionally, trial counsel will not be deemed ineffective for failing to call a medical, forensic, or scientific expert merely to [evaluate critically] expert testimony that was presented by the prosecution. Thus, the question becomes whether or not defense counsel effectively cross-examined the Commonwealth's expert witness.

*Commonwealth v. Chmiel*, 30 A.3d 1111, 1143 (Pa. 2011) (brackets, citations, and quotation marks omitted).

Appellant's claim lacks merit. At no point in his PCRA petitions or brief does Appellant identify an expert who was available and who would have offered testimony designed to advance his cause. Furthermore, Attorney Fiore cross-examined Dr. McColgan and elicited testimony that the

- 11 -

transection could have been from causes other than sexual abuse. Therefore, no relief is due on this portion of Appellant's argument.

Regarding the studies he allegedly provided to Attorney Fiore, Appellant's brief repeatedly refers to a document he attached to the brief as Exhibit A. Exhibit A appears to be a portion of a document discussing ways to rebut medical findings of sexual abuse, but it is untitled and undated, and does not reference an author or source.[10] Not only does the document appear to be incomplete, it is completely unclear what the document even is. Therefore, even if Appellant provided the document to counsel as he claims, it does not support Appellant's argument that counsel rendered ineffective assistance of counsel by failing to use it as part of his trial strategy.

In his brief, Appellant references studies in the area of sexual abuse by "Dr. McCann," "Doctor Lee [C]oleman," and "Beth A. Townsend," but he does not provide a full cite or even name of the studies.[11] Moreover,

_____

[10] Subsequent to filing his brief, Appellant filed a motion requesting that this Court permit him to supplement Exhibit A with pages he claims he had acquired after he filed his brief. The pages he requests to add still do not render the document complete or add clarity to the document, and would not change our analysis even if we considered them to be part of Exhibit A to his brief. His motion is denied.

[11] It appears that Appellant may be referring to studies referenced in *Lindstadt v. Keane*, 239 F.3d 191 (2d Cir. 2001), a federal case that granted *habeas corpus* relief on which Appellant relies. However, we cannot act as counsel for Appellant and make his arguments for him. *See Commonwealth v. Goodmond*, 190 A.3d 1197, 1201 (Pa. Super. 2018) ("[T]his Court will not act as counsel and will not develop arguments on behalf of an appellant."). Furthermore, *Lindstadt* is non-precedential in this
*(Footnote Continued Next Page)*

- 12 -

Appellant does not explain the studies in a manner that permits this Court to conclude that they contradict Dr. McColgan's findings. To the extent Appellant does explain the content and/or relevance of the studies, we conclude that at best they may establish that some abnormalities in a child's hymen are not the result of sexual abuse, such as scars, tags, or thickened or rolled edges. However, Appellant fails to establish that the studies actually contradict Dr. McColgan's findings as to Victim's transected hymen in the posterior 6 o'clock position, preventing us from concluding (1) that there is merit to his underlying legal claim; (2) that even if he had provided the studies to Attorney Fiore it was unreasonable for Attorney Fiore to decline to use them; and (3) that the failure to use them prejudiced Appellant to the point that the outcome would have been different at trial. Therefore, as to issue one, we affirm the denial of his PCRA petition without a hearing.

**Issue Two: Identification of Appellant**

In his second issue, Appellant argues that Attorney Fiore rendered ineffective assistance of counsel by failing to object to hearsay statements within the testimony of Dr. McColgan. Specifically, Dr. McColgan testified that when Victim described the sexual abuse perpetrated upon her, Victim

*(Footnote Continued)* ───────────────

jurisdiction, does not involve the PCRA, and is factually distinguishable from the instant case. The studies discussed in **Lindstadt** directly contradicted the evidence that had been presented at trial. As we explain *infra*, that is not the case here.

identified Appellant as the perpetrator. According to Appellant, the identification of Appellant was not made for the purposes of medical treatment and therefore was inadmissible hearsay pursuant to Pa.R.E. 803(4). Appellant's Brief at 19-21.

"The medical treatment exception provides that testimony repeating out-of-court statements made for the purposes of receiving medical treatment are admissible as substantive evidence." ***Commonwealth v. Belknap***, 105 A.3d 7, 11 (Pa. Super. 2014) (citation omitted). "The following two requirements must be satisfied in order for a statement to qualify as a medical treatment exception: (1) the statement must be made for the purpose of receiving medical treatment; and (2) the statement must be necessary and proper for diagnosis and treatment." ***Id.*** The identity of the perpetrator of abuse is seldom pertinent to the medical treatment of injuries from the abuse and generally is inadmissible hearsay. ***Commonwealth v. Smith***, 681 A.2d 1288, 1292 (Pa. 1996); ***Commonwealth v. D.J.A.***, 800 A.2d 965, 977 (Pa. Super. 2002) (*en banc*) (extending ***Smith*** to sexual abuse cases).

The PCRA court did not grant an evidentiary hearing on this issue, explaining in its Rule 1925(a) opinion that it deemed the claim to be without merit because Dr. McColgan testified that the history provided by Victim was important to determine which tests were needed for sexually transmitted diseases, where to look for healed injuries, and to determine if Victim

experienced emotional trauma and needed follow-up counseling. PCRA Court Opinion, 9/7/2018, at 14.

While identifying a perpetrator's physical characteristics or general demographic (*i.e.*, a male adult) may be relevant for diagnosis in some cases, **Commonwealth v. Vining**, 744 A.2d 310, 319 (Pa. Super. 1999), the Pennsylvania Supreme Court and this Court have rejected the argument that a statement identifying the perpetrator of abuse is necessary to psychological and emotional treatment and treatment for sexually-transmitted diseases. **Smith**, 681 A.2d at 1292 (determining that admission of child's statement identifying perpetrator under the rationale of psychological and emotional treatment is too expansive and would swallow the rule); **D.J.A.**, 800 A.2d at 976-77 (concluding that child's statement identifying perpetrator cannot, "standing alone, determine whether the child should be tested and/or treated for a sexually transmitted disease" and therefore is inadmissible hearsay). Based upon this law, we conclude the trial court's analysis of prong one of the ineffective assistance of counsel test was in error.

Notwithstanding the merit of Appellant's claim, Appellant has not satisfied the second and third prongs of the test to establish ineffective assistance of counsel. Regarding the second prong, "[w]here matters of strategy and tactics are concerned, counsel's assistance is deemed constitutionally effective if he chose a particular course that had some

reasonable basis designed to effectuate his client's interests." **Commonwealth v. Sneed**, 45 A.3d 1096, 1107 (Pa. 2012). "Not every choice made by counsel will play out as intended; however, the test is not whether the course chosen is successful, but rather whether in making that choice there was a logical reason supporting counsel's action." **Commonwealth v. Smith**, 995 A.2d 1143, 1159 (Pa. 2010). A chosen strategy cannot be deemed unreasonable "unless it can be concluded that an alternative not chosen offered a potential for success substantially greater than the course actually pursued." **Commonwealth v. Koehler**, 36 A.3d 121, 132 (Pa. 2012).

Although the evidentiary hearing related to different PCRA claims, Attorney Fiore testified regarding his overall trial strategy. According to Attorney Fiore, once the trial court ruled prior to trial that the Commonwealth would be permitted to introduce evidence of Appellant's prior bad acts of abusing his wife, Attorney Fiore concentrated on devising a strategy on how he could turn that negative into a positive for the defense. N.T., 4/17/2017, at 20-21, 24, 36. Specifically, his chosen defense strategy was to argue that Victim and her sister fabricated their stories to get Appellant out of the house to save their mother from his physical abuse because she was not taking action to remove Appellant. *Id.* On appeal, the Commonwealth contends that based upon Appellant's trial strategy, it was not unreasonable to fail to object to Dr. McColgan's testimony because

Appellant was not denying that Victim had identified him as the perpetrator. Commonwealth's Brief at 15-16. We agree.

Additionally, as to the third prong, Appellant has not demonstrated that he was prejudiced by the hearsay to the extent that had it not come in, he would have received a different outcome at trial. Victim testified and directly named Appellant as the perpetrator during her testimony, and Appellant's daughter M.G. also testified that she had witnessed Appellant raping Victim. Their testimony was properly admitted, and the jury, in its province, credited their firsthand accounts of the abuse. Because Dr. McColgan's testimony was "merely cumulative of other, properly admitted testimony," even if counsel had objected and succeeded in having the hearsay statement in Dr. McColgan's testimony excluded, the exclusion would have reasonably had little difference on the outcome of Appellant's trial. *Commonwealth v. Wallace*, 724 A.2d 916, 922 (Pa. 1999). Therefore, Appellant has not established the second and third prongs of the ineffective-assistance-of-counsel test, and the PCRA court did not err by denying Appellant's petition as to this issue.[12]

**Issues Three and Four: Expert Testimony as to Chlamydia**

We address Appellant's third and fourth issues together as they are interrelated, and together are intertwined with the issue of failing to consult

---

[12] We may affirm the PCRA court's decision on any basis supported by the record, even if our rationale is different from that of the PCRA court. *Commonwealth v. Pou*, 201 A.3d 735, 740 (Pa. Super. 2018).

with or present an expert on sexually-transmitted diseases, which is an issue the PCRA court permitted to proceed to an evidentiary hearing. Appellant's Brief at 3; Concise Statement, 3/27/2018, at ¶¶ 3, 4. Appellant argues that Attorney Fiore rendered ineffective assistance of counsel when he failed to object to Dr. McColgan's testimony regarding the transmission of sexually-transmitted diseases. Appellant's Brief at 22. According to Appellant, this was outside of Dr. McColgan's stipulated area of expertise. *Id.* He further argues that Attorney Fiore should have called a defense expert at trial regarding sexually-transmitted diseases and introduced Center for Disease Control (CDC) studies he had provided to Attorney Fiore that contradicted Dr. McColgan's testimony. *Id.* at 22-29.

By way of background, there is no dispute that Victim tested negative for chlamydia during her medical examination in 2009 after the abuse came to light. At the PCRA hearing, Attorney Fiore testified that Appellant claimed he had chlamydia at some point, and Appellant wanted Attorney Fiore to establish that Victim's abuse allegations were false because Victim did not have chlamydia. N.T., 4/17/2017, at 4. Attorney Fiore testified that he did not recall Appellant's asking him to find an expert, and he did not consider hiring an expert because he was not aware of an expert who could have benefited the defense. *Id.* at 6-7, 9, 13. Appellant stated during the hearing that he had told Attorney Fiore about a CDC report he had wanted

- 18 -

Attorney Fiore to look into, but Attorney Fiore denied that Appellant ever mentioned a CDC report. *Id.* at 8-9.

Our review of the trial transcript reveals the following. During his cross-examination of Victim's mother at trial, Attorney Fiore got Victim's mother to acknowledge that she had chlamydia around 2002 or 2003. N.T., 2/6/2013, at 165-66. She believed she received chlamydia from Appellant because Appellant had been cheating on her, whereas she did not have any other sexual partners besides Appellant at the time. *Id.*

After the testimony by the Victim's mother regarding chlamydia, the Commonwealth asked Dr. McColgan to opine on a hypothetical, which was whether it was possible for a person with chlamydia to perform a sexual act and not transmit chlamydia to the other person. N.T., 2/7/2013, at 27. Dr. McColgan responded that while it is possible to transmit a sexually-transmitted disease during a sexual act, it also is possible not to infect the other person, depending upon the sexual act. *Id.* at 27-28. She stated that the risk of disease transmission is lowered if ejaculation occurs outside of a body cavity. She acknowledged that a sexually-transmitted disease can be transmitted "even without ejaculation because sometimes some fluid comes out prior to ejaculation[,]" but "the less fluid transferred, the less likely" it is for the infection to be transmitted. *Id.* She also stated that prepubertal children are less likely to contract sexually-transmitted diseases, and when it does occur, a disease like chlamydia likely will clear up on its own within a

couple of years. *Id.* Spontaneous clear-up can also occur with postpubertal children. *Id.* According to Dr. McColgan, chlamydia is often asymptomatic, and may be cleared up by antibiotics commonly used for colds and other infections. *Id.*

Attorney Fiore neither objected to Dr. McColgan's testimony nor cross-examined her on this topic. During his closing argument, however, Attorney Fiore argued to the jury that

> you heard [Appellant's] ex-wife testify that she believed that [Appellant] had given her [c]hlamydia, and you also heard that [Victim] tested negative for [c]hlamydia. I don't know how that matches up. I am not a medical expert, but your common sense would tell you one thing would lead to another.

*Id.* at 91.

Regarding his allegation that the sexual transmission of disease was outside the scope of Dr. McColgan's expertise, Appellant has not met his burden of proving the underlying merit to such a claim. He simply made a conclusory assertion without analysis in his brief, and offered no support for this argument at the PCRA hearing. Dr. McColgan testified as an expert in the diagnosis and treatment of child sexual abuse. It stands to reason that such expertise would include the transmission of sexually-transmitted diseases between an infected adult to a child, as the presence of an infection that is normally transmitted via sex in a child would be an indicator of possible sexual abuse. Appellant has not established a basis for us to conclude otherwise.

- 20 -

As with his claim that Attorney Fiore should have presented a defense expert at trial as to the transection, his claim regarding the alleged ineffectiveness for failing to call an expert on the topic of sexually-transmitted diseases fails because Appellant has not identified an expert, let alone one who would have advanced his cause and been available to testify. *See Chmiel*, 30 A.3d at 1143.

Finally, Appellant also failed to prove that counsel was ineffective for not using the CDC report at trial. The PCRA court found Attorney Fiore's denial that Appellant had ever mentioned such a report to him to be credible.[13] We are bound by the PCRA's court credibility determinations that are supported by the record. *Commonwealth v. Johnson*, 966 A.2d 523, 532 (Pa. 2009).

Furthermore, the CDC report upon which Appellant is relying appears to be page one of a fact sheet about chlamydia from the CDC's website, retrieved on April 8, 2014, after Appellant's trial. *See* Appellant's Brief at Exhibit C. Regarding transmission, the fact sheet merely states that one can receive a sexually-transmitted disease even if no ejaculation occurs. *Id.* ("Chlamydia is transmitted through sexual contact with the penis, vagina, mouth, or anus of an infected partner. Ejaculation does not have to occur

---

[13] Appellant's own statements about the report are inconsistent. Although Appellant repeatedly claims in his brief that he "presented" the CDC report to Attorney Fiore before trial, *see* Appellant's Brief at 22-23, at the hearing Appellant simply stated that he "told him that [he] had a report that [he] wanted [Attorney Fiore] to look into." N.T., 4/17/2017, at 8.

for chlamydia to be transmitted or acquired."). Dr. McColgan's testimony was not in conflict; indeed, she directly acknowledged that it was possible to transmit a disease without ejaculation. Therefore, the information on the CDC fact sheet was cumulative to her testimony.

Finally, Appellant did not offer any evidence at the PCRA hearing as to when he had chlamydia, and acknowledged he did not "know if it was in 2002" as his ex-wife had testified. Thus, as it stands, Appellant has only proven that he may have had chlamydia around the time Victim says he started raping her, but Victim did not have it at age 16, which hardly exonerates him or even creates reasonable doubt.

Based on the foregoing, Appellant has not been successful in pleading and proving the underlying merit to his claim. Nor has he been successful in pleading and proving prejudice, such that there was a reasonable probability of a different outcome had counsel used the CDC report at trial. Accordingly, the trial court did not err by dismissing Appellant's PCRA petition as to this issue.

**Issue Five: Character Witnesses**

In his fifth issue, Appellant argues that Attorney Fiore was ineffective by failing to present the testimony of Carlos Rivera and Nilsa Diaz at trial. Appellant's Brief at 30-33. Appellant claims Attorney Fiore never spoke to these witnesses. *Id.* Appellant also claims that Attorney Fiore never told him that he was not planning on calling these witnesses. *Id.*

Both the PCRA court and the Commonwealth claim that Appellant waived his fifth issue by not raising it below. Appellant argues that his fifth issue is encompassed by the sixth claim in his August 25, 2015 petition. Appellant's Reply Brief at 2. In that claim, he contended that Attorney Fiore rendered ineffective assistance of counsel by not calling available character witnesses and by pursuing a different strategy instead, and for convincing Appellant to waive his right to present the character witnesses without Appellant having a knowing and intelligent understanding of the waiver. PCRA Petition, 8/25/2015, at ¶ 6.

Although the issues relate to the similar underlying acts – *i.e.*, not calling witnesses – Appellant frames the issues differently in his brief versus his petition. Moreover, to prove that counsel was ineffective for not calling a witness, it is Appellant's burden to establish, *inter alia*, that the witness existed, was available, and is willing to testify. **Commonwealth v. Michaud**, 70 A.3d 862, 867-68 (Pa. Super. 2013). Although Appellant attaches an affidavit from Rivera to his brief, that affidavit neither appears in the record below nor explains what testimony Rivera could have offered in Appellant's defense at trial. There is no affidavit from Diaz - in the certified record or otherwise – and Appellant does not explain what testimony she could have offered. Therefore, Appellant has waived this issue by not

preserving it before the trial court, and by not developing his claim on appeal.[14]  *See* Pa.R.A.P. 302(a), 2119(a); Pa.R.Crim.P. 902(B).

## Issue Six: Victim's Feelings Regarding Domestic Violence

Appellant's sixth claim alleges that Attorney Fiore rendered ineffective assistance of counsel by failing to object to the Commonwealth's question to Victim about how she felt regarding Appellant's abuse of her mother. Appellant's Brief at 34-40.  Appellant argues that the question sought irrelevant information and was prejudicial because it related to a prior bad act by Appellant.  *Id.*

Appellant has waived this claim by not raising it before the PCRA court. *See Elliott*, 80 A.3d at 430; Pa.R.A.P. 302(a); Pa.R.Crim.P. 902(B).  This is the case even if we deemed it to be encompassed by his more general claim in his May 22, 2016 PCRA filing that his counsel was ineffective for not

---

[14] Even if this issue were not waived, it has no merit.  The record reveals that at trial, Attorney Fiore notified the trial court that two defense witnesses were present, but he had decided to forgo calling them.  Attorney Fiore explained that although Appellant did not have violent convictions, which would permit counsel to present witnesses who could testify as to Appellant's reputation for peacefulness, counsel decided it would be counter-productive to do so based upon the chosen trial strategy.  N.T., 2/7/2013, at 50-52.  As described *supra*, that trial strategy included arguing that Victim and her sister fabricated the story of Appellant's sexual abuse to get Appellant away from their mother, whom Appellant was abusing.  During an on-the-record colloquy, Appellant stated that he was in agreement with not calling the character witnesses as part of his trial strategy.  *Id.* at 52.  In fact, Appellant testified in a manner that was consistent with the trial strategy (*i.e.*, that he had struck his wife in front of Victim and her sister). *Id.* at 57.  Accordingly, Appellant's claim in his brief that he was not aware of counsel's decision not to call the witnesses is belied by his colloquy at trial.

objecting to the Commonwealth's introduction of prior bad acts, because the May 22, 2016 filing was a legal nullity. **See** footnote 5, ***supra***.

Furthermore, even if Appellant's claim were not waived, it would have no merit. This Court already determined on direct appeal that the trial court did not abuse its discretion in permitting testimony regarding Appellant's abuse of his wife; such testimony was permissible to explain Victim's delay in reporting Appellant's sexual abuse. ***Gonzalez***, 112 A.3d at 1238.

## Issue Seven: Replacement of Juror

Appellant claims that when juror number two got sick during trial, alternate juror number 13 was skipped impermissibly in favor of alternate juror number 14. He further contends that juror number 14 did not deliberate and some other unidentified juror deliberated in juror number 14's place. Appellant argues that he was denied a constitutionally fair trial and his trial counsel was ineffective for not objecting to this error or requesting a mistrial. Appellant's Brief at 40-43.

We do not reach the merit of this claim. Appellant never raised this claim in any PCRA petition, and only raised it for the first time in his Rule 1925(b) concise statement. Therefore, he has not preserved this claim and it is "indisputably waived." ***Commonwealth v. Reid***, 99 A.3d 470, 494 (Pa. 2014) (holding that claim not raised in PCRA petition cannot be raised for first time on appeal) (citation omitted).

**Issue Eight: Illegal Sentence Pursuant to *Alleyne***

Appellant's eighth issue purports to present a challenge to his sentence of incarceration based upon *Alleyne*. Appellant's Brief at 44-51. The PCRA court and the Commonwealth contend Appellant waived his *Alleyne* challenge because he did not raise the issue before the PCRA court, but the record indicates otherwise. As discussed *supra*, Appellant raised such a challenge in his motion to modify sentence on April 17, 2015, which was a PCRA petition that was never addressed. Furthermore, *Alleyne* "implicates the 'legality' of a sentence for issue preservation purposes, and thus is not waivable." *Commonwealth v. Barnes*, 151 A.3d 121, 122 (Pa. 2016). One serving an illegal sentence pursuant to *Alleyne* may obtain relief so long as "such relief is sought in a timely[-filed] PCRA petition and the judgment of sentence was not final when *Alleyne* was announced." *DiMatteo*, 177 A.3d at 191. This is the case for Appellant; he was sentenced on June 4, 2013, and his sentence was not final when *Alleyne* was announced on June 17, 2013. Therefore, Appellant "is entitled to application of *Alleyne*, notwithstanding his failure to raise this claim in the PCRA court." *Commonwealth v. Sandusky*, 203 A.3d 1033, 1103 (Pa. Super. 2019).

Nevertheless, Appellant has failed to convince us that he is entitled to relief. Appellant's argument is woefully undeveloped regarding *Alleyne*. Not only does he neglect to discuss *Alleyne* and its progeny, he does not

even specify whether he received a mandatory-minimum sentence. Instead, his analysis focuses solely on the discretionary aspects of his sentence, rather than its legality. Only challenges to the legality of a sentence are cognizable under the PCRA; challenges that take issue with a judge's sentencing discretion are not cognizable under the PCRA. ***Commonwealth v. Fowler***, 930 A.2d 586, 593 (Pa. Super. 2007).

Moreover, it is not apparent from the record that he was subjected to an illegal mandatory-minimum sentence pursuant to ***Alleyne***. Only two of his crimes potentially involve a mandatory-minimum sentence: rape of a child[15] and IDSI with a child.[16] Both of those offenses contain an element that the victim must be under the age of 13. 18 Pa.C.S. §§ 3121(c), 3123(b). The mandatory-minimum sentencing statute that was in effect at the time the crimes were committed mandated a minimum sentence of five years. 42 Pa.C.S. §§ 9718(a)(1), (3) (effective November 30, 2004 to December 31, 2006). While there was some discussion at his sentencing hearing by counsel regarding the applicability of mandatory minimum sentences, ***see*** N.T., 6/4/2013, at 16, there was also discussion of the

---

[15] ***See*** 18 Pa.C.S. § 3121(c) ("A person commits the offense of rape of a child, a felony of the first degree, when the person engages in sexual intercourse with a complainant who is less than 13 years of age.").

[16] ***See*** 18 Pa.C.S. § 3123(b) ("A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age.").

applicable guidelines, including a potential enhanced maximum sentence due to Victim's age, *see id.* at 14-16. Appellant was sentenced to 10 to 20 years of incarceration for each of these crimes, a sentence which exceeded the mandatory-minimum sentences, but was within the maximum statutory limit.

It appears that the trial court did not sentence Appellant by using facts it determined itself by a preponderance of the evidence to invoke the mandatory-minimum statute. Instead, the trial court used its discretion to apply the discretionary sentencing guidelines to arrive at a legal sentence within a range of sentences.[17] *See Commonwealth v. Zeigler*, 112 A.3d 656, 662 (Pa. Super. 2015) (holding that trial court did not issue an illegal sentence when it exceeded the mandatory-minimum sentence, applied the sentencing guidelines, and imposed a sentence within the statutory limits). Accordingly, we see no indication that Appellant's sentence offends *Alleyne*, at least regarding his term of incarceration.

---

[17] It is not immediately apparent from the record whether this sentence was in the standard or aggravated range of the guidelines. Even if it was in the aggravated range, *Alleyne* only prohibits legislatures from requiring judges to apply **specific** minimum sentences based upon facts the judge determines by a preponderance of the evidence. *Commonwealth v. Washington*, 142 A.3d 810, 819 (Pa. 2016). *Alleyne* does not prohibit judges from using their discretion to determine and weigh certain factors in fashioning a sentence within a range authorized by law. *Alleyne*, 570 U.S. at 116; *Washington*, 142 A.3d at 819.

**Issue Nine: Failure to Petition for Allowance of Appeal**

In his final claim, Appellant argues that Attorney Fiore was ineffective for failing to petition the Pennsylvania Supreme Court for allowance of appeal. Appellant contends that he and family members asked Attorney Fiore to appeal to the Supreme Court, but Attorney Fiore abandoned him. Appellant's Brief at 53. Because Appellant raised this claim for the first time on appeal, it is waived.[18] *Reed*, 99 A.3d at 494.

**Conclusion**

Based on the foregoing, we affirm the PCRA court's order dismissing Appellant's PCRA petition. Additionally, as discussed in footnote ten, *supra*, we deny Appellant's motion to supplement Exhibit A to his brief.

Motion denied. Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/24/19

---

[18] Appellant maintains that he preserved this claim by raising it in paragraph nine of his August 25, 2015 PCRA petition. Reply Brief at 1. Paragraph nine, however, relates to a different issue and does not preserve the argument he presents on appeal.